## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| DONALD R. STALLWORTH, JR. (f/k/a DONALD COOK), on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIPPON SANSO MATHESON, INC. (formerly known as MATHESON TRI-GAS, INC.),<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:26-cv-953 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Donald R. Stallworth, Jr. ("Plaintiff" or "Stallworth"), on behalf of himself and all others similarly situated, brings this unpaid overtime action against Defendant Nippon Sanso Matheson, Inc., formerly known as Matheson Tri-Gas, Inc. ("Matheson"), under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., as amended (the "FLSA"). For cause of action, Stallworth respectfully shows as follows:

### I. NATURE OF SUIT

1. Matheson violated the FLSA by classifying its dispatchers as exempt from overtime and by paying them a flat salary with no overtime compensation for hours worked over forty per workweek, even though the duties of those dispatchers do not satisfy the requirements of any FLSA exemption.

2. Stallworth worked for Matheson as a dispatcher for approximately six years. Throughout that period, Matheson paid him the same salary every pay period, regardless of the number of hours he worked.

3. Stallworth routinely worked at least ten to eleven hours per day, Monday through Friday, and was regularly called and required to work in the early morning hours, often at 2:00 a.m., 3:00 a.m., and 4:00 a.m., to handle route changes, driver callouts, and product shortages.

4. Stallworth was not the only Matheson dispatcher subjected to this pay practice. Matheson employed multiple dispatchers who worked with Stallworth as well as at its other regional operations. Those dispatchers perform the same job duties under the same company-dictated guidelines and the same flat-salary pay structure, with no overtime compensation. Stallworth brings this action on behalf of himself and all other similarly situated dispatchers who were classified as exempt and paid no overtime in violation of the FLSA.

## II. PARTIES

5. Plaintiff Donald R. Stallworth, Jr. is an individual residing in The Colony, Denton County, Texas, which is within this judicial district and division. Matheson's payroll and tax records identify him as "Donald Cook," his former legal name. His consent is attached as Exhibit A.

6. Defendant Nippon Sanso Matheson, Inc., formerly known as Matheson Tri-Gas, Inc., is a corporation organized under the laws of Delaware and registered to transact business in Texas.

7. Effective on or about April 1, 2026, Matheson Tri-Gas, Inc. amended its certificate of incorporation to change its corporate name to Nippon Sanso Matheson, Inc. although it is still the same legal entity.

8. Matheson may be served with process through its registered agent for service of process in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

9. At all times relevant to this action, Matheson was an "employer" of Stallworth and the putative class members within the meaning of 29 U.S.C. § 203(d).

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Stallworth asserts claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

11. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Stallworth's claims occurred here. Stallworth resided in Denton County, which is within the Sherman Division, throughout the relevant period. Matheson management, terminal managers, and drivers contacted Stallworth at his Denton County residence during the early morning hours, in the evenings, and on weekends, and required him to perform dispatch work for Matheson from that residence. Matheson also regularly transacts business within this District and Division.

12. This Court has personal jurisdiction over Matheson because Matheson maintains a continuous and systematic presence in Texas.

## IV. COVERAGE UNDER THE FLSA

13. At all relevant times, Matheson has acted, directly or indirectly, in the interest of an employer with respect to Stallworth and the putative class members.

14. At all relevant times, Matheson has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all relevant times, Matheson has been an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all relevant times, Matheson has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Matheson has had, and continues to have, employees engaged in commerce or in the production of goods for commerce, and employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. Matheson's annual gross volume of sales made or business done is far in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

17. At all times relevant to this action, Stallworth was an "employee" of Matheson as defined by Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1), and was "employ[ed]" by Matheson within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

18. In the course of his employment, Stallworth regularly handled and worked on goods and materials that had been moved in or produced for commerce, including computers, and telecommunications equipment.

19. The putative class members are or were similarly situated to Stallworth with respect to FLSA coverage in that they were and are employees of Matheson engaged in commerce or in the production of goods for commerce, employed by an enterprise engaged in commerce or in the production of goods for commerce.

## V. FACTUAL ALLEGATIONS

20. Matheson produces, distributes, and sells industrial, medical and specialty gases, along with gas handling equipment and welding supplies, to customers in industries that include semiconductor manufacturing, healthcare, energy, food processing, and metal fabrication. Matheson is the largest North American subsidiary of Nippon Sanso Holdings Corporation, a Tokyo-based industrial gas conglomerate.

21. Matheson's business involves the delivery of compressed industrial gas products by truck to customer locations across the country. To run that delivery operation, Matheson employs a workforce of dispatchers.

22. Matheson employed Stallworth as a dispatcher from approximately 2020 through February 2026, a period of approximately six years.

23. As a dispatcher, Stallworth's primary duty was scheduling routes for trucks carrying Matheson's industrial gas products to customer locations. He performed that work using Matheson's routing and dispatch software systems.

24. Stallworth did not set Matheson's routing policies. He did not determine which trucks Matheson operated, which products it carried, which customers it served, or what schedules its drivers were required to meet.

25. He did not set drivers' pay, hire or fire drivers, or discipline drivers. He did not negotiate with customers, suppliers, or third parties on behalf of Matheson, and he did not commit Matheson on matters of financial significance to its business.

26. Stallworth's routing work was governed by detailed company guidelines, federal Department of Transportation rules concerning driver hours of service, and the operational requirements of Matheson's plants, terminals, and customers.

27. The rules dictating which routes could be assembled, when, by which drivers, and under what conditions were not Stallworth's rules. They were Matheson's rules and the federal government's rules. Stallworth's job was merely to apply those rules.

28. Stallworth reported through three layers of management: a supervisor, a manager above the supervisor, and a director above the manager. Matheson management observed Stallworth's work in real time through the routing system and routinely overrode his planning decisions,

instructing him to move particular shipments, prioritize one route over another, or change route sequences mid-day. Stallworth carried out those instructions; he did not set them.

29. Stallworth had no independent authority to make weather-related or safety-related shutdown decisions affecting Matheson's fleet operations. Those decisions were made collectively by Matheson's management and terminal managers. Stallworth's role in such decisions was to relay management's directives to drivers, not to make the decisions himself.

30. Matheson paid Stallworth the same gross amount every two weeks regardless of the number of hours he worked during the corresponding workweeks.

31. Matheson did not pay Stallworth any overtime premiums for any hours he worked in excess of forty per workweek.

32. Matheson set Stallworth's schedule. In a January 8, 2026 schedule reminder sent to the dispatch team, Matheson's Logistics Manager for Bulk confirmed that the team worked set scheduled times, assigned Stallworth to a Monday through Friday shift running from 6:00 a.m. to 4:00 p.m., and instructed the team that responsibility for telephone coverage rested with the dispatchers and that the schedules were set to ensure appropriate phone coverage.

33. Stallworth typically worked at least ten to eleven hours per day, Monday through Friday, a minimum of fifty to fifty-five hours during each regularly scheduled workweek.

34. In addition to those regularly scheduled hours, Stallworth was regularly required to perform work for Matheson during the early morning hours, often at 2:00 a.m., 3:00 a.m., and 4:00 a.m. Matheson management, terminal managers, and drivers contacted Stallworth by telephone and text message during those hours, and Stallworth was expected to take the calls, respond, and resolve route changes, driver callouts, equipment failures, and product shortages.

35. Stallworth also performed this after-hours work on Saturdays, on Sundays, and on weekday evenings.

36. Those after-hours communications were not voluntary. The nature of the time-critical delivery work, and the expectation imposed by Matheson's management, required Stallworth to be available and to respond. Stallworth was never truly off work.

37. This after-hours work performed by Stallworth was compensable time under the FLSA. It was in addition to the regularly scheduled hours of fifty to fifty-five per workweek described above.

38. Matheson knew, or should have known, that Stallworth was performing these after-hours dispatch tasks as Matheson's own employees and contractors were the ones initiating the communications. Matheson suffered and permitted Stallworth to perform this work and did not compensate him for it.

39. Matheson did not maintain any timekeeping system for tracking the actual hours worked by Stallworth or by the putative class members. Matheson's own policies require it to record hours worked only for employees it classifies as non-exempt.

40. Matheson classified Stallworth as exempt from the overtime requirements of the FLSA. However, no exemption under 29 U.S.C. § 213(a)(1) or any other provision of the FLSA applied to Stallworth.

41. Stallworth's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of Matheson or Matheson's customers.

42. Stallworth's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

43. Stallworth's primary duty was not management of the enterprise or of a customarily recognized department or subdivision of the enterprise.

44. Stallworth did not customarily and regularly direct the work of two or more other full-time employees or their equivalent.

45. Stallworth did not have the authority to hire or fire other employees, and his suggestions and recommendations regarding the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

46. Because no FLSA exemption applied to Stallworth, Matheson was required to pay him overtime compensation at a rate of not less than one-and-one-half times his regular rate of pay for all hours worked in excess of forty per workweek.

47. Matheson's failure to pay Stallworth overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

48. Matheson is a sophisticated, multibillion-dollar enterprise with hundreds of United States locations, thousands of employees, in-house legal counsel, a human resources department, and the backing of a global parent corporation. Matheson has the resources and the legal infrastructure to know its obligations under the FLSA. Matheson knew or showed reckless disregard for whether its conduct in failing to pay overtime to its dispatchers was prohibited by the FLSA.

49. On information and belief, the United States Department of Labor, Wage and Hour Division, has investigated Matheson's pay practices on multiple occasions. Each investigation found that Matheson violated the FLSA's overtime requirements, and each resulted in an assessment of overtime back wages owed to Matheson employees.

50. On information and belief, the most recent of those three investigations examined the logistics operation at Matheson's Irving, Texas headquarters, found overtime violations affecting dozens of employees in that operation, and concluded approximately twelve months before Matheson hired Stallworth into that same operation.

51. Matheson has also been sued repeatedly for failing to pay overtime under the FLSA. In *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-00660-HSG (N.D. Cal.), an hourly delivery driver of industrial and medical gases brought collective and class claims alleging that Matheson systematically underpaid overtime by failing to include non-discretionary bonuses in the regular rate. The court provisionally certified a nationwide FLSA overtime class.

52. In *Groves v. Matheson Tri-Gas, Inc.,* No. 3:20-cv-03238-L (N.D. Tex.), a Logistics Planner, a position in the same job family as Stallworth's, alleged that Matheson had misclassified her as exempt and failed to pay her overtime, and further alleged that the Department of Labor had investigated Matheson and found violations as to her position.

53. In *Smelser v. Matheson Tri-Gas, Inc.,* No. 4:24-cv-04743 (S.D. Tex.), filed during Stallworth's employment, hourly control room operators and process operators alleged that Matheson paid them straight time rather than the overtime premium for hours worked on Sundays.

54. The DOL investigations and the federal lawsuits described above placed Matheson on notice of its obligation to pay overtime to its employees, and of the consequences of failing to do so, on multiple occasions over multiple years.

55. Notwithstanding that knowledge, Matheson continued to maintain a company-wide pay practice of classifying its dispatchers as exempt and paying them a flat salary with no overtime, in violation of the FLSA. Matheson's violation of the FLSA was not the product of

any good-faith attempt to comply, nor was it based on reasonable grounds for believing its conduct did not violate the Act.

56. Matheson's failure to keep accurate records of the hours worked by Stallworth and the putative class members was willful and in reckless disregard of Matheson's recordkeeping obligations under the FLSA. 29 U.S.C. § 211(c).

## VI. ALLEGATIONS RELATED TO THOSE SIMILARLY SITUATED

57. Stallworth incorporates the preceding paragraphs as though fully set forth herein.

58. Stallworth brings this action on behalf of himself and all other similarly situated persons pursuant to 29 U.S.C. § 216(b). The proposed class consists of: All current and former dispatchers employed by Matheson at any time during the three years preceding the filing of this Complaint who were classified as exempt from overtime, paid on a salary basis, and not paid overtime compensation for all hours worked in excess of forty per workweek.

59. Stallworth and the putative class members are similarly situated in that they were and are subject to a single, common, and uniform pay practice maintained by Matheson: classifying its dispatchers as exempt, paying them a flat salary, and refusing to pay any overtime premium for hours worked in excess of forty per workweek.

60. Stallworth and the putative class members are also similarly situated in their job duties. Matheson's dispatchers, across regions, perform the same core function, which is planning and scheduling routes for Matheson's fleet of trucks under company-dictated guidelines, federal rules, and the close supervision and active direction of Matheson's management.

61. Stallworth and the putative class members are also similarly situated in their schedules and in the after-hours demands placed on them. Matheson set the dispatchers' schedules centrally

and required the dispatch team to provide telephone coverage for Matheson's around-the-clock delivery operation.

62. Matheson's failure to pay overtime compensation to Stallworth and the putative class members was not the product of isolated or individualized circumstances. It was the product of a uniform corporate decision by Matheson to classify its dispatcher workforce as exempt from overtime. That decision applied uniformly across the relevant period and across geographical regions.

63. Matheson employed approximately twenty-eight dispatchers, including Stallworth, on a single team. Matheson employs additional dispatchers at its other regional operations. The identities and contact information of all putative class members can readily be ascertained from Matheson's personnel and payroll records.

64. Stallworth and the putative class members are entitled to recover unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorney's fees, and costs pursuant to 29 U.S.C. § 216(b).

65. Stallworth requests that the Court authorize court-supervised notice to all members of the putative collective informing them of this action and of their right to opt in by filing a written consent to join under 29 U.S.C. § 216(b).

## VII. CAUSE OF ACTION

### FAILURE TO PAY WAGES IN
### ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

66. Stallworth incorporates the preceding paragraphs as though fully set forth herein.

67. During the relevant period, Matheson violated Section 7 of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing Stallworth and the putative class members in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA

for workweeks longer than forty hours, without compensating them for work in excess of forty hours per workweek at rates not less than one-and-one-half times the regular rates at which they were employed.

68. In further violation of the FLSA, Matheson has failed to maintain accurate employee pay and time records, including the number of hours worked per workweek by Stallworth and the putative class members. 29 U.S.C. § 211(c).

69. Matheson has failed to make any good-faith effort to comply with the FLSA. Matheson knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation.

70. Stallworth and the putative class members are entitled to liquidated damages in an amount equal to their unpaid overtime compensation. 29 U.S.C. § 216(b).

71. Stallworth and the putative class members seek all unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorney's fees, costs, and litigation expenses, including expert witness fees, as provided by 29 U.S.C. § 216(b), along with pre- and post-judgment interest at the highest rate allowed by law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Donald R. Stallworth, Jr., on behalf of himself and all others similarly situated, prays for judgment against Matheson as follows:

   a.  For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), finding Matheson liable for unpaid back wages due to Stallworth and the members of the collective, and for liquidated damages equal in amount to the unpaid compensation found due to them;

   b.  For an Order authorizing the issuance of notice, at the earliest possible time, to all current and former dispatchers employed by Matheson during the three years preceding the filing of this Complaint, informing them of this action and permitting them to assert timely FLSA claims by filing individual consents to join pursuant to 29 U.S.C. § 216(b);

c.  For an Order awarding Stallworth and the putative class reasonable attorney's fees, costs, and litigation expenses, including expert witness costs, as provided by 29 U.S.C. § 216(b);

d.  For an Order awarding Stallworth and the collective pre-judgment and post-judgment interest at the highest rates allowed by law;

e.  For an Order awarding Stallworth and the collective declaratory and injunctive relief as necessary to prevent Matheson's further violations of the FLSA and to effectuate the purposes of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq.; and

f.  For all such other and further relief, at law or in equity, to which Stallworth and the collective may show themselves justly entitled.

Respectfully Submitted,

WELMAKER LAW, PLLC
505 E. Magrill
Longview, Texas 75601
Tel: (512) 799-2048

By: */s/ Douglas B. Welmaker*
    Douglas B. Welmaker
    Texas State Bar No. 00788641
    doug@welmakerlaw.com
    Attorney-in-Charge

THE BUENKER LAW FIRM
P.O. Box 10099
Houston, Texas 77206
Tel: (713) 868-3388
Fax: (713) 683-9940

Josef F. Buenker
Texas State Bar No. 03316860
jbuenker@buenkerlaw.com

ATTORNEYS FOR PLAINTIFF